```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND
```

|   |   |
|---|---|
| ADAPTIVE MOLECULAR TECHNOLOGIES, INC. | : |
| v. | : Civil Action No. DKC 2005-2077 |
| SPS MARKETING, INC. | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution are (1) the motion of Defendant SPS Marketing, Inc., to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2) and to dismiss Count IV (Maryland Unfair Deceptive Trade Practice) for failure to state a claim pursuant to Rule 12(b)(6), (paper 5), and (2) the motion of Plaintiff Adaptive Molecular Technologies, Inc., for leave to file a surreply, (paper 9). The issues have been briefed fully and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the court will defer a decision on whether Plaintiff can establish sufficient facts about Defendant's contacts with Maryland to create personal jurisdiction so that the parties may conduct limited discovery. In light of the foregoing, the court will not consider Defendant's motion to dismiss Count IV and will deny Plaintiff's motion to file a surreply.

**I.   Background**

This trademark dispute is between two companies that produce lubricants for weapons. Plaintiff Adaptive Molecular Technologies, Inc., is incorporated in Virginia with a principal place of business in Waldorf, Maryland. Since September 1988, Plaintiff has owned the MILITEC and MILITEC-1 trademarks,[1] which are used in connection with metal conditioners and lubricant oils for "engines, transmissions, gear boxes, pumps, military and sporting weapons, ammunition, and the like." (Paper 1, at 3-4). These products are used by state and federal agencies. (Paper 1, at 2).

Defendant, doing business as SLiP 2000, also manufactures gun-care products, including the SLiP2000 Lubricant, which is used by hunters, recreational and competition shooters, and law enforcement agencies, and the SLiP2000 GPL, a general purpose lubricant that was developed for military use.[2] (Paper 5, ex. 1). The company is developing a third product, SLiP 2000 MIL-X

---

[1] Plaintiff attached a copy of its two trademark registrations with the United States Patent and Trademark Office. (Paper 1, exs. A, B). The two trademarks will be referred collectively as "MILITEC."

[2] Defendant states that the general purpose lubricant is "for use by the U.S. Military and not for commercial purposes" and that it has never sold the product in Maryland. (Paper 5, ex. 1, at 4).

y

Lubricant ("MIL-X"[3]), for the military.  Thus far, Defendant has not sold MIL-X to either the military or to any Maryland customers.  *Id.*

Plaintiff's complaint, filed July 28, 2005, alleges the following claims: Count I, Trademark Infringement, pursuant to 15 U.S.C. § 1114(1); Count II, False Designation of Origin and Unfair Competition, pursuant to 15 U.S.C. § 1125(a); Count III, Maryland Unfair Competition; Count IV, Maryland Unfair and Deceptive Trade Practice, pursuant to Md. Code Ann., Com. Law § 13-301 *et seq.*; and Count V, Interference with Prospective Business Advantage.

Specifically, Plaintiff claims that Defendant infringed its MILITEC trademarks by using the SLiP2000 MIL-X trademark in connection with a weapons cleaner and lubricant, and this use "causes a likelihood of confusion, deception and mistake." (Paper 1, at 3).  Plaintiff's claims are based on two related but distinct concerns: Defendant's use of its website at www.slip2000.com to advertise the MIL-X product nationally and to Maryland customers, and Defendant's use of five National

---

[3] Based on Defendant's papers, it appears that Defendant has a registered trademark for "SLiP 2000."  It is not clear whether Defendant has registered or is seeking to register "MIL-X."

3

Stock Numbers ("NSNs"[4]) to win federal contracts for the SLiP 2000 MIL-X product.  With respect to the latter concern, Plaintiff contends that the military assigned Plaintiff use of the five NSNs for the purpose of selling MILITEC brand products to the U.S. military.  Plaintiff claims that Defendant used Plaintiff's NSNs in bidding for contracts through the Defense Supply Center in Richmond, Virginia, and as a result, Defendant obtained a $53,491.20 contract award on June 24, 2005, and a second contract for $14,877.00 on July 25, 2005.  Plaintiff asserts that buyers "intending to order Plaintiff's product, MILITEC-1 . . . are instead receiving Defendant's product."  (Paper 1, at 5).[5]

Defendant responded to Plaintiff's complaint by filing the present motion to dismiss, which includes a supporting affidavit from Greg Conner, president of SPS Marketing, Inc.  (Paper 5).  Conner states that the company has not sold MIL-X to either the military or any Maryland customers, and it will market MIL-X

---

[4] Plaintiff states that the federal government uses NSNs to identify specific items for purchase by a government agency or entity.  Plaintiff claims it has exclusively supplied gun lubricant under these NSNs, and has spent more than $600,000 on promoting its MILITEC-1 product to U.S. troops.  (Paper 1, at 4).

[5] Plaintiff's complaint is not entirely clear on whether it contends that Defendant sold SLiP 2000 products in general to the military or whether Defendant has sold the MIL-X product specifically.

4

only to the military.  Copies of Defendant's website show that the MIL-X advertisement includes a statement that MIL-X is "[n]ot yet available to the general public." (Paper 5, ex. 3).

In arguing that there is no personal jurisdiction, Defendant asserts that it has "no business presence in Maryland." (Paper 1, at 5).  Specifically, Conner states in his affidavit that the company is incorporated under California law; its principal place of business is Rohnert Park, California; it is registered to do business in California and Nevada; it has no registered agent in Maryland; it does not have any officers, directors, employees, or agents located in Maryland; it does not pay taxes to the state of Maryland or any municipal or county government in Maryland; it does not maintain any facilities or places of business in Maryland; it does not have a mailing address or answering service in Maryland; it does not own or lease real or personal property in Maryland; and it does not advertise in any publication based in Maryland or aimed primarily at Maryland residents. *Id*.

According to Conner's affidavit, Defendant's products have been made available in Maryland through one of three routes.  First, Defendant has shipped its products to Maryland as a result of website sales.  The website includes an "online store" in which visitors can make a purchase over the Internet or print

5

out and mail in order forms.  (Paper 7, ex. 8).  Over a four-year period, sales to Maryland customers from Defendant's website constituted approximately .00058% of its gross sales.[6]  Additionally, Defendant's website assists visitors in finding dealers in their area that carry Defendant's products.  Second, Defendant states that twice over the past five years, Defendant shipped an unspecified amount of its products to Maryland pursuant to a contract with the Federal Law Enforcement Training Center headquartered in Glynco, Georgia.  Third, Defendant's products are available in Maryland through a distributor.  Defendant states that the distributor buys the products, ships them into Maryland, and decides which retail establishments will be supplied with these products.  Defendant's website lists twelve retail stores in Maryland.[7]  (Paper 7, ex. 6).  Although

---

[6] The sales included $90.00 worth of product to the City of Frederick in 2005; $24.00 worth of product to the Fort Washington Office of Special Technology in Fort Washington in 2004; and $72.00 worth of product to a branch of the U.S. Navy in Maryland in 2005.  Defendant did not provide a complete list or the total dollar amount of gross Internet sales to Maryland. (Paper 5, ex. 1).

[7] The cities carrying Defendant's products are Bel Air, Annapolis, Glen Burnie, Baltimore, Williamsport, Waldorf, Hancock, Severna Park, Upper Marlboro, Kennedyville, and Princess Anne.  (Paper 7, ex. 5, 6).  The exhibit contains only the Maryland stores.  Another exhibit provided by Plaintiff, exhibit 7, shows that there are no dealers in the District of Columbia.  The parties supply no other information on the number or locations or other retail outlets listed on the website.

willing to disclose its Internet sales, Defendant did not state how much product is sold in Maryland through its relationship with the distributor (assuming it knows), nor how the Maryland-sold products compare to sales elsewhere.

## II. Standard of Review

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Fed.R.Civ.P. 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence."  *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993)).  If the existence of jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989).  If the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits, and discovery materials, "the plaintiff need only make a prima facie showing of personal jurisdiction."  *Carefirst of Maryland*, 334 F.3d at 396; *see also Mylan*, 2 F.3d at 60; *Combs*, 886 F.2d at

7

676. In determining whether the plaintiff has proven a prima facie case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan,* 2 F.3d at 60; *Carefirst of Maryland*, 334 F.3d at 396.

A federal district court may exercise personal jurisdiction over a non-resident defendant "if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103, authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003); *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 212-13 (4th Cir. 2002). Thus, "[the] statutory inquiry merges with [the] constitutional inquiry." *Carefirst Of Maryland*, 334 F.3d 390, 396–97 (citing *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135 (4th Cir. 1996)). Accordingly, the question for the court is whether the defendant purposefully established "minimum contacts" with Maryland such that maintaining the suit does not

offend "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)); *see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985); *Base Metal Trading, Ltd.*, 283 F.3d at 213.

The crucial issue is whether Defendant's contacts with the forum state of Maryland are substantial enough that it "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  A defendant has fair warning that it might be subject to a forum's jurisdiction if it purposefully directs its activities at forum residents and "the litigation results from alleged injuries that 'arise out of or relate to' those activities."  *Burger King Corp.,* 471 U.S. at 472 (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984)).  Where a nonresident defendant purposefully has engaged in significant activities within the forum state or has created "continuing obligations" with residents of the forum state, the defendant has obtained the benefits and privileges of conducting business there – and thus, "it is presumptively not unreasonable to require him to

9

submit to the burdens of litigation in that forum as well." *Burger King Corp.*, 471 U.S. at 476.

### III. Analysis

Defendant has moved to dismiss Plaintiff's complaint on the ground that its contacts with Maryland are insufficient to subject it to personal jurisdiction. Generally, the "nature of the claim and the defendant's contacts with the forum state determine whether a court may assert specific or general personal jurisdiction." *Johansson Corp. v. Bowness Constr. Co.*, 304 F.Supp.2d 701, 703 (D.Md. 2004). Specific jurisdiction may exist if the claim is related to or arises out of the defendant's contacts with the forum state. *See Helicopteros*, 466 U.S. at 414; *Johansson*, 304 F.Supp.2d at 703. General jurisdiction, however, may be asserted in a suit unrelated to the defendant's contacts with the forum state if the defendant maintains "continuous and systematic" contact with the state. *Helicopteros*, 466 U.S. at 414-15; *Johansson*, 304 F.Supp.2d at 703-04. However, "the threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997). Plaintiff argues that the court can exercise both specific and general jurisdiction over Defendant. (Paper 7).

10

### A.  Specific Jurisdiction

Plaintiff asserts that this court has specific jurisdiction over Defendant because Defendant has engaged in infringing use of Plaintiff's trademark on its website and "other places." (Paper 1, at 4).  Plaintiff claims Defendant "directly and intentionally seeks and has sought business from Maryland customers" through the dealers who sell Defendant's products in the state and through its website, which results in products shipped directly to Maryland customers and which lists Maryland retail dealers. (Paper 7, at 6-7).

Defendant responds that there has been no purposeful contact with Maryland.  Defendant points out that the allegedly infringing MIL-X product cannot be purchased yet and the product is being developed for military, not civilian, customers.  "SPS does not plan to market MIL-X to any commercial users or residents in the State of Maryland."  (Paper 5, ex. 1, at 4). Defendant further argues that analysis of Defendant's contacts should focus on the MIL-X product and should not consider contacts involving Defendant's other products.

To determine whether the exercise of specific jurisdiction comports with due process, a court considers (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the forum state; (2)

11

whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable." *See, e.g., Carefirst of Maryland*, 334 F.3d at 397; *Johansson Corp.*, 304 F.Supp.2d at 704.

A somewhat similar situation was involved in *Reynolds and Reynolds Holdings, Inc. v. Data Supplies, Inc.*, 301 F.Supp.2d 545 (E.D.Va. 2004). In *Reynolds*, the plaintiff, who claimed patent, copyright, and trademark rights in the design of business forms, brought claims under federal and Virginia laws.[8] The Defendant's contacts included its registration to do business in Virginia; its website, which was accessible to people in Virginia; and its ongoing sales to two car dealerships in Virginia. The court rejected Plaintiff's argument in favor of specific jurisdiction.[9] The court found that the plaintiff's cause of action did not "arise out of" the defendant's website because none of the allegedly infringing products were available

---

[8] Like Maryland, Virginia's courts have interpreted that state's long-arm statute as extending to the limits of due process. *Id*. at 550.

[9] The court also held that it lacked general jurisdiction because only 0.4% of the defendant's sales were made in Virginia and its relationship with the two Virginia dealerships had resulted in only $7,152 worth of business over a two-year period. *Id*. at 552.

for purchase on the website, and there was no indication that Defendant had specifically marketed those products to customers in Virginia. *Id*. at 552-53. Also, the business relationship with the two car dealerships did not confer jurisdiction because neither dealership had purchased the disputed products. "A prerequisite to the application of the stream of commerce theory is that defendant's product actually be sold, directly or indirectly, in the forum state." *Id*. at 554 (citing *World-Wide Volkswagen*, 444 U.S. at 297). *See also Coastal Video Commc'ns, Corp. v. Staywell Corp.*, 59 F.Supp.2d 562, 566 (E.D. Va. 1999) (finding no specific jurisdiction where there was no evidence that the defendant's product, a publication that allegedly violated the plaintiff's copyright, was sold in the forum state of Virginia). *Cf. ALS Scan*, 293 F.3d at 715 (noting that the only direct contact the defendant, who was accused of copyright infringement, had with the forum state of Maryland was an Internet website but "that website is unrelated to ALS Scan's claim in this case because Digital's website was not involved in the publication of any infringing photographs.").

In this case, the lack of sales of the MIL-X product in Maryland – either online or through its distributor – critically undermines Plaintiff's argument. Plaintiff's suggestion that Maryland customers "may have been confused by the use of the

13

MIL-X mark when they purchased [a] SLiP2000 product" because Defendant advertises its MIL-X product on the same pages as its non-infringing products is tenuous at best. (Paper 7, at 8). Plaintiff offers unsupported speculation when it states that "[t]he confusing use of the MIL-X mark on SPS's website appears to be intended to redirect customers, including customers in Maryland, from plaintiff's own website." (Paper 7, at 8). To find specific jurisdiction based on these allegations would be inconsistent with the requirements of due process. *See Reynolds,* 301 F.Supp.2d at 553. Accordingly, the court finds that Plaintiff has not made a prima facie case to establish specific jurisdiction.

**B.   General Jurisdiction**

The question of specific jurisdiction, however, is only part of the analysis. As discussed previously, the court may exercise general jurisdiction if Defendant's contacts with Maryland are "continuous and systematic." In its motion to dismiss, Defendant initially characterizes Plaintiff's personal jurisdiction claims as based solely on Defendant's advertisement of the MIL-X product on its website. (Paper 5, at 9). Plaintiff answers by clarifying that its personal jurisdiction argument also includes Defendant's retail sales, (paper 7, at 14-15), and argues that Defendant "has transacted business in

14

Maryland, it has contracted to sell goods in Maryland, and it has caused tortious injury in Maryland by virtue of its infringing and unfair competition activities against plaintiff . . . ."[10] (Paper 7, at 6).  Defendant counters that its retail sales do not constitute "continuous and systematic" contacts because its distributor buys the products and decides whether Plaintiff's products will be sold in Maryland.[11]  (Paper 8, at 4-5). Relying on *ALS Scan*, Defendant argues that the sale of SLiP2000 products to a distributor who determines where the

---

[10] Maryland's long-arm statute provides in part:

> (b)  A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
>
> (3) Causes tortious injury in the State by an act or omission in the State; . . .

Md. Code Ann., Cts. & Jud. Proc., § 6-103 (2002).

[11] Defendant puts great emphasis on the point that its retail sales in Maryland involved products other than the allegedly infringing MIL-X product, and therefore those sales do not qualify as contacts in the analysis of general jurisdiction. (Paper 8, at 5-6).  However, as discussed previously, general jurisdiction may be asserted in a suit *unrelated* to the defendant's contacts with the forum state.  *Helicopteros*, 466 U.S. at 414-15; *Johansson*, 304 F.Supp.2d at 703-04.

products will be sold does not result in jurisdiction because this "stream of commerce" theory "was never adopted by the Supreme Court as the controlling principle for defining personal jurisdiction." (Paper 8, at 5). However, Defendant takes *ALS Scan* out of context. The section from which Defendant cites focuses on the interplay of commerce and the Internet. The issue here is the distribution of products in a brick-and-mortar world, not over the Internet.

Based on the record, Plaintiff has not shown, prima facie, that Defendant's contacts with Maryland are sufficient to establish general jurisdiction. For instance, whether a corporation is "doing business" in Maryland depends on "the nature and extent of the business and activities which occur in the forum state." *S.A.S. Pers. Consultants, Inc. v. Pat-Pan, Inc.*, 407 A.2d 1139, 1142 (Md. 1979). One of the factors a court may consider is a defendant's supervision and control of distributors and services for customers within the forum state, *id*. The only information about Defendant's agreement with its distributor is Defendant's assertion that the distributor buys Defendant's products and "determines which stores will offer SPS' products." (Paper 5, ex. 1, at 2). Plaintiff asserts that Defendant could prohibit sales in Maryland if it wished to avoid suit here. (Paper 7, at 7 n.3).

Plaintiff has asked for limited discovery into the nature and extent of Defendant's activities in Maryland. (Paper 7, at 10). A court may allow limited discovery to explore jurisdictional facts. *Mylan,* 2 F.3d at 64. Accordingly, Plaintiff will be permitted a brief opportunity to take limited discovery on the nature and extent of Defendant's contacts through retail sales of its products in the state of Maryland. At the very least, that discovery may include obtaining a copy of Defendant's contract with the distributor – or the portions dealing with the choice of retail outlets. Further information about the sales in Maryland, in comparison to sales elsewhere, may be sought. Plaintiff will then be permitted to file an additional opposition to Defendant's motion, to which Defendant may reply.

**C.   Plaintiff's Motion to File a Surreply**

Surreplies are allowed only with leave of the court, Local Rule 105.2.a, and "may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F.Supp.2d 600, 605 (D.Md. 2003), aff'd, 112 Fed.Appx. 923 (4th Cir. 2004). Plaintiff has filed a motion for leave to file a surreply to address Defendant's assertion that Plaintiff may not be a Maryland corporation and to bring new information to

17

the court's attention regarding Defendant's efforts to seek business in the state of Maryland.  With respect to the first issue, Defendant did not raise any new issues or legal theories in its reply brief; it merely responded to Plaintiff's arguments that fair play and justice support personal jurisdiction in Maryland.  With respect to the second issue, the motion is moot in light of the court's decision to grant limited discovery and the filing of a supplemental opposition.

### IV. Conclusion

For the foregoing reasons, the court will defer ruling on Defendant's motion to dismiss for a period of thirty days. Plaintiff may take discovery as noted above and file a supplemental memorandum within that time.  The court denies Plaintiff's motion to file a surreply.  A separate Order will follow.

　　　　　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　DEBORAH K. CHASANOW
　　　　　　　　　　　　　　　　　　United States District Judge

　　　　　　　　　　　　　　　　　　October 11, 2005