IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | : |
| ADAPTIVE MOLECULAR | |
| TECHNOLOGIES, INC. | : |
| | |
| v. | : Civil Action No. DKC 2005-2077 |
| | |
| | : |
| SPS MARKETING, INC. | |
| | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this trademark and unfair competition case are (1) the motion of Defendant SPS Marketing, Inc., to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2) and to dismiss Count IV (Maryland Unfair Deceptive Trade Practice) for failure to state a claim pursuant to Rule 12(b)(6) (paper 5), and (2) three motions filed by Plaintiff and Defendant to file documents under seal, (papers 17, 19, 21). The issues have been briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the court will grant Defendant's motion to dismiss for lack of personal jurisdiction and will deny Plaintiff's and Defendant's motions to file documents under seal. Defendant's motion to dismiss Court IV will not be reached.

**I.   Background**

The court previously deferred consideration of the personal jurisdiction issue to allow Plaintiff to conduct limited discovery. The supplemental briefing reveals the following:

## A. Distributor Sales

Defendant's products are available in Maryland through a Virginia-based distributor, KeepSafe, which is run by Phil Hill, who is the sole owner and employee.[1]  Defendant and KeepSafe have an agreement by which KeepSafe buys the products and in turn sells the products to dealers and government agencies in Maryland. (Interrog., paper 18, ex. A7, 3-4; Hill dep., paper 20, 14-15). KeepSafe has purchased nearly $72,300 worth of Defendant's products since 2002.  (Paper 18, exs. A8, J).  Of that amount, KeepSafe has sold nearly $8,000 worth of Defendant's products to twenty Maryland dealers and government agencies between January 2002 and November 2005.  (Paper 18, ex. K19).

Defendant and KeepSafe do not have a formal contract that governs their relationship.  Although KeepSafe proposed a contract (paper 18, ex. A6), Conner did not sign it because he did not want to provide KeepSafe with exclusive rights to distribute products in the territory.  (Conner dep., paper 18, ex. A, 68-69).  Instead, Conner and KeepSafe have an oral agreement to use the proposed contract as a guideline, including a provision that identifies

---

[1] Defendant currently has one distributor, KeepSafe.  In 2003, Defendant used a sales representative group identified by two names: DayMark (Hill dep., paper 20, at 97) and Danmark (paper 22, at 7).  The court will use the name provided by Defendant (Danmark) because Defendant is in the best position to know the company's name.  The Danmark representatives identified new customers and KeepSafe filled the orders.  (Hill dep., paper 20, at 34).  The Danmark sales totaled $2,473.06.  (Paper 22, ex. 2).

Maryland as part of KeepSafe's territory and a provision that states that the purpose of the agreement is "to develop and sustain a satisfactory volume of sales of the Seller's products in the Territory." (Conner dep., paper 18, ex. A, 68-69, 75; paper 18, ex. A6, 4, proposed contract). Their verbal agreement also requires Defendant to put the names of dealers on Defendant's website. (Conner dep., paper 18, ex. A, 76-77).

**B. Direct Sales**

Defendant has shipped its products directly to Maryland customers as a result of website sales and telephone calls. (Conner dep., paper 18, ex. A, 16). These sales have been made to individuals, government agencies, and dealers.[2] *See, e.g., id.* at 17, 21, 29. Altogether, Defendant has made at least $11,031.62 in direct sales to Maryland from 2001 to October 11, 2005.[3] (Paper 18, ex. C). These direct sales represent less than one percent of Defendant's gross sales during that period. (Paper 22, ex. 1).

With respect to Internet sales, Defendant's website includes an "online store" at which visitors can purchase products over the Internet or print out order forms to mail in. (Paper 7, ex. 8). Sales to Maryland customers from Defendant's website constituted

---

[2] The sales to dealers generally involve situations where KeepSafe did not have the product in its warehouse. (Conner dep., paper 18, ex. A, 26).

[3] Defendant calculates these direct sales to Maryland at $10,874.95. (Paper 22, ex. 1). However, Defendant's calculation omits two invoices in ex. D.

approximately .22741% of its gross sales over a four-year period.[4] (Conner am. aff., paper 16).  Defendant's website also lists dealers in Maryland that carry Defendant's products.

### C.  Samples and Promotions

Defendant promotes and markets its products in Maryland.  Most significantly, Defendant has provided free product samples to Maryland dealers, government agencies, one business, and individuals.  (Paper 18, ex. A1, invoices).  Defendant has provided at least 2,000 samples plus miscellaneous additional items such as product literature.[5]   (Paper 18, ex. H).  Although Defendant asserts that it provided samples only after receiving a request (Conner dep., paper 18, ex. A, 56-57; Hill dep., paper 20, 60-61), Conner testified that the samples are "a promotional item given to the dealers" (Conner dep., paper 18, ex. A, 24), which suggests that Defendant routinely provided samples.  In addition, Defendant provided the prizes for a Prince George's County Law Enforcement Shoot Show (Hill dep., paper 20, 54-55), and Mr. Conner attended a

---

[4] In the original affidavit, Conner stated that website sales constituted 0.00058% of Defendant's gross sales over the same period.  (Paper 5).  In his deposition, Conner stated that the initial research was based on sales of its gun lubricant only, and the corrected number reflects all products sold to customers in Maryland.  (Conner dep., paper 18, ex. A, 130).

[5]  Plaintiff's exhibit appears to be missing at least one page, so the court cannot determine the actual number of samples provided.

trade show in Indian Head, Maryland, to promote and market Defendant's products. *Id*. at 59.

### D. Trade Show Sales

There is some dispute over whether Defendant's products have been sold at trade shows in Maryland. Conner testified that products could be ordered at trade shows (Conner dep., paper 18, ex. A, 16), but there are no documents to show that Defendant made any sales at a Maryland trade show, and Hill could not confirm that he had sold any of Defendant's products at a Maryland trade show (Hill dep., paper 20, at 88-89).

## II. Analysis

### A. Specific Jurisdiction

In its initial opposition to Defendant's motion to dismiss, Plaintiff argued that the court could exercise both specific and general jurisdiction over Defendant. (Paper 7). This court held, however, that Plaintiff did not state a *prima facie* case for specific jurisdiction. (Paper 10). Although Plaintiff reasserts that specific jurisdiction is permissible (paper 20, at 22), Plaintiff still has alleged no facts to show that the allegedly infringing product, MIL-X, was ever sold in Maryland or that the MIL-X product caused confusion to any Maryland customers. Accordingly, Plaintiff has not stated a *prima facie* case of specific jurisdiction.

**B.   General Jurisdiction**

The court may exercise general jurisdiction if Defendant's contacts with Maryland are "continuous and systematic."  "[B]road constructions of general jurisdiction should be generally disfavored," *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993), and courts typically will assert general jurisdiction over nonresidents only where the nonresidents "are essentially domiciled within the forum state." *Atlantech Distrib., Inc. v. Credit Gen. Ins. Co.*, 30 F.Supp.2d 534, 536 (D.Md. 1998) (quoting *Corry v. CFM Majestic, Inc.*, 16 F.Supp.2d 660, 663 (E.D.Va. 1998).

Plaintiff asserts that Defendant's contacts with Maryland are "continuous and systematic" based on Defendant's use of a distributor whose sales territory includes Maryland; Defendant's direct sales to customers; Defendant's promotions, which include the distribution of free samples; and Defendant's interactive website.

The facts in *Nichols v. G.D. Searle & Co.* demonstrate the difficulty of establishing general jurisdiction over a nonresident. The defendant, a manufacturer of an intrauterine device, employed thirteen Maryland residents as consumer product representatives, as well as two district managers to supervise them.  The defendant's contacts with Maryland also included district meetings in Maryland three times a year, advertisements in local newspapers, regional and national meetings in Maryland, and a contract with a Maryland

6

firm to conduct research for the defendant. *Nichols*, 991 F.2d at 1198. The defendant also gave its representatives a supply of samples and promotional materials to distribute in Maryland. *Id*. The sales of the defendant's products amounted to $9,000,000-$13,000,000 annually, which constituted approximately two percent of its total sales. *Id*. The Fourth Circuit found that the defendant's contacts were insufficient to confer general jurisdiction. *Id*. at 1200.

Because Plaintiff's argument includes Defendant's sales through its distributor, *Lee v. Walworth Valve Co.*, 482 F.2d 297 (4th Cir. 1973), is also instructive. The case involved a wrongful death action filed by the decedent's wife, of South Carolina, against the nonresident company that manufactured a valve believed to be at fault for the husband's death. The husband had been killed off the coast of Guantanamo Bay, Cuba, while on a military ship. Even though the ship was not built in South Carolina and the death occurred on the high seas, the Fourth Circuit held that a South Carolina court had personal jurisdiction over the valve company because several of the defendant's salesmen visited customers in South Carolina regularly, the defendant occasionally sent engineers into the forum state to deal with engineering problems, and the defendant's volume of business amounted to approximately $200,000 annually or a "small percentage" of the

7

defendant's total sales.[6]  *Id*. at 299.  The Fourth Circuit noted
that the cause of action did not arise in any other state.  *Id*. at
299.  Thus, even though the court found that personal jurisdiction
existed, the court's "decisions since *Lee* make clear that even the
contacts in *Lee* were marginal."  *ESAB*, 126 F.3d at 624.

The existence of a website that can be viewed within the forum
state is also relevant.  The Fourth Circuit has held that simply
placing information on the Internet does not subject a person or
entity to jurisdiction in every state that receives the electronic
signal – something more is needed.  *See Carefirst of Md., Inc. v.
Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 400 (4th Cir. 2003);
*ALS Scan*, *Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707,
714 (4th Cir. 2002).  A defendant "must have acted with the
'manifest intent' of targeting Marylanders."  *Carefirst*, 334 F.3d
at 400.  Whether the defendant intended to target Maryland can be
determined from the character of the website at issue.  *Id*.

The court recognizes that Defendant's contacts with Maryland
are greater than what Defendant attested to in his original
affidavit.  For instance, Conner's affidavit understated the level
of direct sales of its products in Maryland, and the affidavit did
not discuss the distribution of samples in Maryland.  In addition,
although KeepSafe decided which distributors would receive
Defendant's products and was responsible for finding new dealers in

_____

[6] The case does not give the specific percentage.

Maryland, Defendant's verbal agreement apparently requires KeepSafe to make Defendant's products available in Maryland.

Nevertheless, Defendant's contacts are not sufficient to confer general jurisdiction. Defendant's direct sales to Maryland customers represent less than one percent of Defendant's total gross sales. Even if the court includes all of the sales made through its distributor (KeepSafe's sales of nearly $8,000 and Danmark's sales of $2,473.06), the total amount of Defendant's products sold in Maryland amounts to 1.78% of Defendant's total gross sales. In *Nichols*, the court found no personal jurisdiction where the defendant's sales in Maryland constituted approximately two percent of the total sales. *Nichols*, at 1198. Moreover, the defendant in *Nichols* had significant additional contacts that the present Defendant lacks, including the employment of Maryland residents on the defendant's sales force, regular meetings in Maryland, advertisements in local newspapers, and a contract with a Maryland firm for research.

Plaintiff primarily relies on two cases in which courts held that personal jurisdiction existed: *Mieczkowski v. Masco Corp.*, 997 F.Supp. 782 (E.D. Tex. 1998) and *Blistex, Inc. v. Circle Labs., Inc.*, No. 00-C-3084, 2000 WL 1154635 (N.D.Ill. Aug. 15, 2000). In both cases, however, the defendants had more contacts with the forum states than the Defendant here. In *Mieczkowski*, the defendant shipped more than $5.7 million worth of product to

9

residents in the forum state of Texas; the defendant had consummated more than 250 business transactions with Texas residents, which amounted to more than $717,000 in sales; the defendant's sales to Texans accounted for 3.2% of the defendant's gross sales over a four-year period; the defendant did a direct mailing twice a year to Texas residents; the defendant bought furniture from a Texas company; and the defendant operated a website that was accessible to Texas residents. *Mieczkowski*, 997 F.Supp. at 785. In *Blistex*, sales of all of the defendant's products in the forum state of Illinois accounted for 45.5% of the defendant's total sales; the defendant handed out coupons for free samples to approximately 250,000 Illinois public school students; the defendant distributed approximately 21,6000 samples in Chicago; and the defendant's website encouraged visitors to write letters to retailers requesting that the defendant's product be stocked. *Blistex*, 2000 WL 1154635, at *3.

Plaintiff has not met its burden of proving a *prima facie* case of personal jurisdiction by a preponderance of the evidence. *See Carefirst of Md.*, 334 F.3d at 396. Accordingly, Defendant's motion to dismiss for lack of personal jurisdiction is granted.

**IV. Motion to Seal**

The Plaintiff and Defendant have filed three unopposed motions under Local Rule 105(11) to seal two memoranda and accompanying

exhibits in papers 18, 20 and 22.  (Papers 17, 19, 21).  Local Rule 105.11 provides:

> Any motion seeking the sealing of pleadings, motions, exhibits or other papers to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protections.  The Court will not rule upon the motion until at least 14 days after it is entered on the public docket to permit the filing of objections by interested parties.  Materials that are the subject of the motion shall remain temporarily sealing pending a ruling by the Court.  If the motion is denied, the party making the filing will be given an opportunity to withdraw the materials.

The parties' motions to seal do not offer either a proposed reason supported by specific factual representations to justify the sealing or an explanation as to why alternatives to sealing would not provide sufficient protections.[7]  Accordingly, the motions do not comply with Rule 105.11 and will be denied.  The local rule provides that the moving party be given an opportunity to withdraw the materials if a sealing motion is denied.  The parties should note, however, that the court has considered the papers in determining the motion to dismiss.  Given the ruling on the motion and now that the case will be dismissed, unsealing the papers and exhibits will result in the paper copies being available to the

---

[7] The motions to seal include records that already are publicly available, such as website pages, government records and records on file in this case, and thus the requests are overbroad.

11

public, but the court will not require them to be filed electronically. Counsel are to notify the court within 10 days whether they wish to withdraw any portion of the papers and/or exhibits. Otherwise, they will be unsealed at that time.

## V.  Conclusion

For the foregoing reasons, the court will grant Defendant's motion to dismiss for lack of personal jurisdiction and need not reach Defendant's motion to dismiss Count IV (Unfair Deceptive Trade Practice). The court further denies Plaintiff's and Defendant's motions to seal papers 18, 20, and 22. A separate Order will follow.


                                     _____/s/_____
                                     DEBORAH K. CHASANOW
                                     United States District Judge